**BYBEE et al. v. SHANKS.**

Court of Appeals of Kentucky.

Dec. 5, 1952.

258

Richardson & Barrickman, Glasgow, for appellant.

Wilson & Wilson, Glasgow, for appellee.

MILLIKEN, Justice.

Appellee, Leonard E. Shanks, instituted this action against Terrell Bybee and Virginia Holmes, administratrix of the estate of George H. Holmes, deceased, because of personal injuries which he sustained as a result of the alleged concurrent negligence of Bybee and Holmes in the operation of their respective automobiles at a time when he was a guest in the automobile of the latter. Trial before a jury resulted in a verdict and judgment in favor of appellee for $10,644.40. The appellants filed separate appeals in this court which have been consolidated for our consideration.

On May 24, 1949, the appellee spent most of the day riding as a guest in an automobile owned and being driven by Holmes. At about 5:00 p. m. they drove to a cafe called the Green Tavern. Holmes parked his car an appreciable distance therefrom and got out and walked to the door of the tavern where he met Bybee and they engaged in conversation. The appellee remained in Holmes' automobile and played the car radio. A few minutes later Holmes and Bybee each got into their respective automobiles. Bybee drove off first and headed in a westerly direction towards Bowling Green and Holmes followed close behind. Both cars quickly picked up mo-

mentum and they sped down U. S. Highway 68 at what had been estimated from 75 to 110 miles an hour. After traveling six to eight miles in close proximity, Holmes passed Bybee at a place called Merry Oaks. Bybee turned his car around and shortly beyond there Holmes did likewise. After turning their cars around they again picked up speed and traveled in close proximity for several miles before Holmes again attempted to pass Bybee, but this time on a steep hill in a no passing zone. When Holmes was alongside Bybee they were suddenly confronted with an oncoming car traveling down the hill. Holmes cut in sharply in front of Bybee and the two cars collided with tremendous impact. The oncoming car successfully passed the other two cars and was not involved in the collision. Holmes was killed and Bybee and the appellee were seriously injured.

Grounds urged for reversal by both appellants are: (1) Appellee was guilty of contributory negligence as a matter of law; (2) the instruction on damages was erroneous; and (3) counsel for appellee made improper argument before the jury. In addition, appellant Bybee, on his behalf, urges that he was not engaged in any race and that his conduct was not the proximate cause of the accident inasmuch as he was on the right and proper side of the highway at the time of the accident, and hence the trial court should have sustained his motion for a peremptory instruction.

■ The first contention that appellee was guilty of contributory negligence as a matter of law is without merit. Appellants intimate that appellee should have jumped out of the car or reached over and turned off the ignition. There are many instances where passivity is a much wiser course of conduct than activity. As stated in 5 Am. Jur., Automobiles, Section 482, page 773:

"In certain situations the safest course is for a passenger in an automobile to sit still and say nothing, because any other course is dangerous. Certainly, interference by laying hold of an operating lever or, in an emergency, by exclamation, or even by direction or inquiry, is generally to be deprecated, as in the long run the greater safety lies in letting the driver alone."

See, also, 18 A.L.R. 314; 22 A.L.R. 1294; 41 A.L.R. 767; 47 A.L.R. 293; 63 A.L.R. 1432; and 90 A.L.R. 984.

Appellants also contend that appellee should have gotten out of the car when Holmes turned around beyond Merry Oaks. Appellee testified that he pleaded with Holmes during this reckless ride to abate his speed, but that Holmes completely ignored him and remained silent. He further testified that when they turned around past Merry Oaks that he opened the door with the intention of getting out, but that Holmes reached across him and slammed the door shut before he could alight. He also testified that the turn was made with such great rapidity that he did not actually have a sufficient opportunity to get out. Appellee also declared that while they were in the act of turning, Holmes said to him that the race was over and that he had shown that his car was the faster.

■ Contributory negligence is ordinarily a question for the jury, but if there is no controversy about the facts and only one conclusion can fairly be drawn from the evidence, the question is one of law for the court. In the case at bar, there is conflict in the evidence and, inasmuch as the trial court instructed the jury on contributory negligence, the appellants certainly have no just complaint on that score.

■ Bybee's contentions that he was not engaged in a race, that his conduct was not the proximate cause of the accident, and that he was entitled to a peremptory instruction are without merit. The general rule concerning joint liability for injury to a third person or damage to his property due to concurring negligence of drivers of automobiles is stated as follows in a note in 16 A.L.R. 465:

"The rule that where two or more tort-feasors by concurrent acts of negligence, which, although disconnected, yet, in combination, inflict an injury, all are jointly liable, is applied in cases involving the joint liability of owners or operators of two or more

automobiles for injuries to a third person or damage to his property."

This note is supplemented in 62 A.L.R. 1425.

It is Bybee's position that there are two types of racing—one where both parties voluntarily participate and the other where only one party is racing without the driver of the other vehicle participating. This may be true, but the circumstances in this case reveal something more than "two ships passing in the night." It is true that Bybee never passed Holmes though Holmes passed Bybee twice, but the evidence heretofore related is certainly sufficient for the jury to find that they were acting in concert by engaging in a race on the public highway. Furthermore, we have the testimony of disinterested witnesses that the two cars appeared to be racing. The continuity of events follows a natural sequence of a prearranged race: (1) an opportunity to arrange the race; (2) tremendous speed by both cars; (3) both cars turning around or near Merry Oaks; and (4) close proximity of the cars throughout the encounter.

 Probably the leading case involving automobiles racing on the highway is that of Reader v. Ottis, 147 Minn. 335, 180 N.W. 117, 16 A.L.R. 463, wherein the Supreme Court of Minnesota held, in effect, that where two or more persons are unlawfully and negligently racing automobiles on a public highway in concert, all are liable in damages to a guest in one of the racing cars who is injured thereby, when the guest protests to the driver, has no control over the driver, and was not engaged in a joint enterprise with the driver. The Minnesota opinion reflects sound legal and humanitarian principles which are applicable to the factual situation of the case at bar.

The trial court inadvertently failed to include in the instructions the usual formula for the measurement of damages for permanent disability. Despite this omission, the amount actually awarded for permanent injuries was not excessive. However, such an omission heretofore has been considered reversible error. Gretton v. Duncan, 238 Ky. 554, 38 S.W.2d 448, and cases there cited.

Appellants' next contention is that counsel for appellee made improper argument before the jury. The objectionable statement is as follows:

" 'About his pain and suffering—is that worth anything, how about his hospital bill, doctor bill and those things—all right you see now take a judgment against Holmes, I know, I am sure Terrell Bybee and as far as judgment against Terrell Bybee and Mrs. Holmes is concerned I am satisfied they think he ought to be paid—' ".

The majority of the court considers the statement sufficiently flagrant to warrant reversal because of its intimation to the jury that the defendants (appellants) were insured against liability.

The judgments are reversed.